AF Approval  *NMA*                                      Chief Approval  *CAB*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

      v.                                      CASE NO. 6:22-cr-171-WWB-EJK

BILLIE HAROLD MCDUFFIE, JR.

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Billie Harold McDuffie, Jr., and the attorneys for the defendant, Corey I. Cohen, Esq., and Mary Ibrahim, Esq., mutually agree as follows:

**A.**     **Particularized Terms**

    1.     Counts Pleading To

The defendant shall enter a plea of guilty to Counts One, Two, Three, and Four of the superseding indictment. Count One charges the defendant with enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Count Two charges the defendant with possession of unauthorized access device making equipment, in violation of 18 U.S.C. §§ 1029(a)(4) and 1029(c)(1)(A)(ii). Count Three charges the defendant with possession of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(i). Count Four charges the defendant with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

Defendant's Initials  *BHM*

2.   <u>Minimum and Maximum Penalties</u>

Count One is punishable by a mandatory minimum term of imprisonment of 10 years up to life, a fine of not more than $250,000, a term of supervised release of at least three years up to life, a special assessment of $100 per felony count for individuals, and $400 per felony count for persons other than individuals, such as corporations, and an additional special assessment of $5,000 if the defendant is not indigent.

Additionally, pursuant to 18 U.S.C. § 3014, the Court shall impose a $5,000 special assessment on any non-indigent defendant convicted of an offense in violation of certain enumerated statutes involving: (1) peonage, slavery, and trafficking in persons; (2) sexual abuse; (3) sexual exploitation and other abuse of children; (4) transportation for illegal sexual activity; or (5) human smuggling in violation of the Immigration and Nationality Act (exempting any individual involved in the smuggling of an alien who is the alien's spouse, parent, son or daughter).

Count Two is punishable by up to 10 years' imprisonment, up to three years' supervised release, a fine of up to $250,000, and a $100 special assessment. Count Three is punishable by up to 10 years' imprisonment, up to three years' supervised release, a fine of up to $250,000, and a $100 special assessment. Count Four is punishable by a mandatory term of imprisonment of two years consecutive to any other term of imprisonment, a fine of up to $250,000, up to one year of supervised release, a fine of up to $250,000, and a $100 special assessment.

Defendant's Initials _BHM_                2

3.      Elements of the Offenses

The defendant acknowledges understanding the nature and elements of

the offenses with which defendant has been charged and to which defendant is

pleading guilty.  The elements of Count One are:

| | |
|---|---|
| First: | The defendant knowingly persuaded, induced, enticed, or coerced the Individual named in the information to engage in sexual activity, as charged; |
| Second: | The defendant used the cellphone to do so; |
| Third: | When the defendant did these acts, the individual named in the indictment was less than 18 years old; and |
| Fourth: | One or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the law of Florida. |

The elements of Count Two are:

| | |
|---|---|
| First: | The defendant knowingly had control or custody of, or possessed, device-making equipment; |
| Second: | The defendant did so with the intent to defraud; and |
| Third: | The defendant's conduct affected interstate or foreign commerce. |

The elements of Count Three are:

| | |
|---|---|
| First: | The defendant knowingly possessed 15 or more access devices; |
| Second: | Those access devices were counterfeit or unauthorized; |
| Third: | The defendant possessed those devices with the intent to defraud; and |

Defendant's Initials _BHM_                3

> Fourth:     The defendant's conduct affected interstate or foreign commerce.

The elements of Count Four are:

> First:      The defendant knowingly possessed or used another person's means of identification;

> Second:    without lawful authority; and

> Third:     During and in relation to the offense of fraudulent use of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3).

4.    Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Five and Six, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    Mandatory Restitution to Victims of Offense of Conviction

Pursuant to 18 U.S.C. § 2259, defendant agrees to make restitution to known victims of the offense for the full amount of the victims' losses as determined by the Court.  Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not

Defendant's Initials _BHm_                    4

to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

    7.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

    8.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies

Defendant's Initials _BHM_         5

with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    <u>Low End</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court.  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10.    <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 982(a)(2)(B), 1029(c)(1)(C), and 2428, whether in the possession or control of the United States, the defendant or defendant's nominees.

Defendant's Initials _BHM_          6

The assets to be forfeited specifically include, but are not limited to, the following: an iPhone, an Evolis thermal card printer, two black card encoders, and two HP desktop computers, which were seized from the defendant on or about July 22, 2022 . The iPhone was used to commit the offenses charged in Counts One through Three of the Superseding Indictment, while the other devices were used to commit the offenses charged in Counts Two and Three of the Superseding Indictment.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

Defendant's Initials _BHM_                 7

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

Defendant's Initials _BHM_          8

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement.  If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the

Defendant's Initials _BHM_                    9

abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

11.    Sex Offender Registration and Notification

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

Defendant's Initials _BHM_                    10

B.     **Standard Terms and Conditions**

    1.     <u>Restitution, Special Assessment and Fine</u>

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

    2.     <u>Supervised Release</u>

        The defendant understands that the offenses to which the defendant is pleading provides for imposition of a term of supervised release upon release from

Defendant's Initials _BHM_                    11

imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

     3.     <u>Immigration Consequences of Pleading Guilty</u>

     The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

     4.     <u>Sentencing Information</u>

     The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.     <u>Financial Disclosures</u>

     Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in

Defendant's Initials $BHM$           12

which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the

Defendant's Initials _BHM_                13

assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _BHM_                    14

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that

Defendant's Initials _BHM_                    15

defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no

Defendant's Initials  _BHM_          16

other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __13th__ day of February, 2024.

ROGER B. HANDBERG
United States Attorney

Billie Harold McDuffie, Jr.
Defendant

By: Courtney D. Richardson-Jones
Assistant United States Attorney

Corey I. Cohen
Attorney for Defendant

Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando

Mary Ibrahim
Attorney for Defendant

Defendant's Initials __BHM__                    17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 6:22-cr-171-WWB-EJK

BILLIE HAROLD MCDUFFIE, JR.

PERSONALIZATION OF ELEMENTS

Count One, enticement of a minor to engage in sexual activity, in violation of

18 U.S.C. § 2422(b):

1.  Did you knowingly persuade, induce, entice, or coerce a minor
    to engage in sexual activity, as charged?

2.  Did you use the cellphone to do so?

3.  When you did these acts, was the individual named in the
    indictment less than 18 years old?

4.  As a matter of Florida law, it is a crime to engage in sexual
    activity with a person 12 years of age or older but less than 16
    years of age, in violation of Florida statute § 800.04(4)(a)(1) &
    (2), and sexual activity by a person 24 years of age or older with a
    person 16 or 17 years of age, in violation of Florida statute §
    794.05(1).  Based on that law, could one or more of the
    individuals engaging in the sexual activity have been charged
    with a criminal offense under the law of Florida?

Count Two, possession of unauthorized access device making equipment, in

violation of 18 U.S.C. § 1029(a)(4) and 1029(c)(1)(A)(ii):

1.  Did you knowingly have control or custody of, or possess
    device-making equipment?

2.  Did you do so with the intent to defraud?

Defendant's Initials _BHM_                      18

3.      Did your conduct affect interstate or foreign commerce?

Count Three, access device fraud, in violation of 18 U.S.C. § 1029(a)(3) and

(c)(1)(A)(i):

1.      Did you knowingly possess 15 or more access devices?

2.      Were those access devices counterfeit or unauthorized?

3.      Did you possess those devices with the intent to defraud?

4.      Did your conduct affect interstate or foreign commerce?

Count Four, aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1):

1.      Did you knowingly possess or use another person's means of
        identification?

2.      Did you have lawful authority to possess or use another person's
        means of identification?

3.      Was your possession or use of another person's means of
        identification committed during and in relation to the offense of
        fraudulent possession of unauthorized access devices?

Defendant's Initials _BHM_                    19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                CASE NO. 6:22-cr-171-WWB-EJK

BILLIE HAROLD MCDUFFIE, JR.

FACTUAL BASIS

From on or about February 6, 2022, through on or about July 22, 2022, in the Middle District of Florida, and elsewhere, the defendant, using a means and facility of interstate and foreign commerce, did knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years, to engage in sexual activity for which any person could be charged with a criminal offense, specifically: lewd or lascivious battery (engage in sexual activity with a person 12 years of age or older but less than 16 years of age), in violation of Florida statute § 800.04(4)(a)(1) & (2), and sexual activity by a person 24 years of age or older with a person 16 or 17 years of age, in violation of Florida statute §794.05(1).

On July 19, 2022, the Federal Bureau of Investigation (FBI) received an online tip in reference to the Defendant. The online tip alleged that in February 2022, a child victim (CV) met the Defendant while the CV was on runaway status and carried on a sexual relationship with the CV for several months. The tip also stated that the Defendant was involved in various fraudulent activities, to include check and credit card fraud. The FBI contacted the CV and arranged to have the CV forensically interviewed.

Defendant's Initials _BHM_                        20

### *Forensic Interview of the CV*

The followingly day, the CV was forensically interviewed. The CV stated the following: that the CV signed up for an account on a dating telephone application. While on the application, the CV met the Defendant. The CV met the Defendant at an unknown location between Lake Alfred and Winter Haven, Florida just off highway 17. The Defendant picked the CV up in his vehicle and took the CV to his residence in Winter Haven, Florida, which is in the Middle District of Florida.

Initially, the CV told the Defendant that she was 18 years old when they met. Approximately one week into their relationship, the Defendant engaged the CV in oral sex and sexual intercourse. Approximately two weeks later, the Defendant told the CV that she needed to get an identification card or social security card so she could work. The CV got nervous and disclosed to the Defendant that she was only 15 years old. Despite knowing the CV's age, the Defendant continued to engage in sexual acts with the CV.  The CV stated she was still in contact with the Defendant through the Snapchat Application and a voice over internet protocol (VOIP) number. The CV reported she last had sexual intercourse with the Defendant approximately four days prior to the interview. The CV also indicated that the Defendant was involved in making false checks and credit cards.

### *Search Warrant of Defendant's Residence*

Based on the forensic interview and the cybertip the FBI obtained a search warrant for the Defendant's home. On July 22, 2022, the FBI and the Polk County Sheriff's Office (PCSO) executed the search warrant on the Defendant's residence.

Defendant's Initials *BHM*                    21

When law enforcement arrived the Defendant informed them that the CV was inside the residence. Agents entered the residence and called out to the CV who was in the back of the residence laying in a bed. Initially, the CV did not comply with the agent's commands to exit the bedroom, however, the CV exited the residence dressed in her underwear and shirt. Upon securing the residence, the search warrant was executed.  Both the Defendant and the CV were interviewed as the search warrant was conducted.

### Defendant's Recorded Interview

Initially the Defendant made statements without being advised of his "*Miranda* Rights*" as the interview was non-custodial and the Defendant had been advised he was free to leave and not answer any questions.  Subsequently, the Defendant was advised of his "*Miranda* Rights" – he reiterated his pre-*Miranda* statements. The Defendant disclosed the following: he stated he met the CV on a phone-based application. The Defendant picked up the CV just minutes away from his residence in Winter Haven, Florida.  The CV came back to the residence and stayed with the Defendant for a couple of weeks. He stated that the CV had no place to live and nothing to eat. The Defendant admitted to engaging in sex with the CV.

According to the Defendant the CV initially led him to believe she was 19 years old. As the relationship continued the Defendant told the CV she needed to get her life together and get a job. At this time the CV told the Defendant that she was only 15 years old. The Defendant acknowledged that he continued to carry on a sexual relationship with the CV after he learned about her age.

Defendant's Initials _B.H.M_                    22

While executing the search warrant, a special agent located a text message exchange in the CV's phone between the Defendant and the CV. The text message was from the previous night in which the Defendant, through the use of his cellphone, told the CV to pick up condoms because he did not know whether the victim had been sexually active with others prior to meeting with him. During the interview the Defendant explained that when he sent this message to the CV, he intended on having sexual intercourse with the CV.

After the text message exchange, the CV went to the Defendant's residence. That night the Defendant had sexual intercourse with the CV and ejaculated inside of the CV. The Defendant also acknowledged that the relationship between the CV and him was illegal. He could not explain why he continued the relationship with the CV after discovering her age.

### *Forensic Extraction of the Defendant's iPhone*

During the execution of the search warrant of the residence the FBI located several items, to include the Defendant's iPhone with the assigned telephone number (xxx) xxx-4416 and the CV's cellphone. Both phones were seized and were taken to the Seminole County Sheriff's Office (SCSO) to be forensically examined. Both phones were examined pursuant to search warrants and copies of the extraction report were provided to the FBI.

On July 26, 2022, a special agent reviewed the extraction report of the Defendant's iPhone. During the review, the agent located several text messages between the CV and the Defendant. The text messages started on February 6, 2022,

Defendant's Initials _BHM_                    23

and concluded on July 22, 2022. The text messages corroborated the information provided by the CV in her forensic interview.

The text messages show the following:  On March 21, 2022, just a month after the Defendant met the CV, the CV revealed her true age. In a chat located on the Defendant's phone the CV wrote, "I am underage". The Defendant responded, "How bad" and the CV replied, "2 years off...I was hoping to tell u on my 18[th] birthday but ur really pushing it...I won't tell anyone if u won't, just saying.". The Defendant then questioned the CV asking the CV if she was 16. The CV responded, "In April". The Defendant replied, "[CV's nickname] u 15". Then he told the CV "I could get in trouble if u got caught with me". The Defendant told the CV that he was scared and stated, "I've been cumming in u".

Despite knowing the CV's age, the Defendant continued to engage in a sexual relationship with the CV. The CV asked the Defendant, "You still love me" to which he responded "Duh...I'm mad...But it don't change my feelings". The Defendant and the CV continued to engage in daily conversations as if they were in a romantic relationship.

Although the Defendant was aware of the CV's true age, he constantly told the CV via text messages that he loved her. Several text messages show how the Defendant used his cellphone to discuss sexual activity with the minor and to induce the minor to meet with him to engage her in sexual activity. On April 28, 2022, the Defendant asked, "Can I get some head when I get home".  The CV responded,

Defendant's Initials _BHM_               24

"Dug…U don't have to ask dummy…Duh*…Unless I already had someone else lol then consider it amputated when u get back…U*".

On May 6, 2022, the CV told the Defendant that she had turned herself in to the police and was at her mother's residence, which is in Osceola County. The CV told the Defendant that she planned on returning to him when the CV turned 18 years old. The Defendant told the CV that he missed the CV and was sad that the CV left. He told the CV that the CV should have told him that she was leaving so he could have done something nice for the CV prior to her departure. The Defendant told the CV, "But nobody gets me like u…My heart will always be there for u". The CV then told the Defendant, "I'm gonna miss timmy omfg" and he replied, "The Uber".[1]

Although the CV returned home, the Defendant continued to communicate with the CV over the cellphone to arrange sexual encounters with the CV. On May 11, 2022, the Defendant and the CV texted about the Defendant coming to the CV's residence to engage in sexual acts. In particular, on May 11, 2022, while the Defendant was driving to the CV's residence, the CV asked him to get her a "slushy". He told the CV, "no", and the CV responded, "lg I'll suck on smth else". The next day, on May 12, 2022, the Defendant asked the CV "Did u shower already". The CV informed him that she had not showered and asked why he asked

---

[1] Based on a review of the chats, law enforcement learned that the CV refers to the Defendant's penis as "Timmy" and he identifies the CV's vagina as "Uber".

Defendant's Initials _BHM_                    25

that. The Defendant replied, "Just kno u got nut in u," meaning that the CV had semen inside her vagina.

The Defendant and the CV continued to arrange sexual encounters via the cellphone and the snapchat application. The Defendant and the CV often fought. In July of 2022, the CV threatened to turn the Defendant into law enforcement after he tried to get naked pictures from her 17-year-old friend through Snapchat on his cellphone. The Defendant responded in a conversation that occurred on July 19, 2022. He sent the CV the following message, "U was a stinking street walker when I found u At 2 in the morning and u lied about ur age...But do what ever u gotta to do as long as I never have to see ur face again". Thereafter, the CV contacted law enforcement and was forensically interviewed by the FBI.

On July 21, 2022, the night before the FBI executed the search warrant, the Defendant and the CV engaged in the following conversation: The CV told the Defendant that she was on the way to his house and sent a picture of a map showing she was in Tampa, Florida. He asked the CV why she was in Tampa, Florida and then instructed the CV to "Stop and get some condoms".  The CV replied, "K". The Defendant further instructed the CV to buy Magnums, ultra-thin. Both the Defendant and the CV confirmed they engaged in sexual activity when the CV arrived at his residence.[2]

---

[2] As a matter of Florida law, it is a crime to engage in sexual activity with a person 12 years of age or older but less than 16 years of age, in violation of Florida statute § 800.04(4)(a)(1) & (2), and sexual activity by a person 24 years of age or older with a person 16 or 17 years of age, in violation of Florida statute §794.05(1).

Defendant's Initials _BHM_                26

The Defendant used his iPhone to communicate with the CV in this case via text and different web based applications to facilitate a sexual relationship.

### *Fraudulent Activity*

On July 22, 2022, in the Middle District of Florida, the defendant, did knowingly, and with intent to defraud, have control and custody of and possess device-making equipment, as defined in 18 U.S.C. § 1029€(6), that is, two card encoding devices and a check printing device, and the offense affected interstate commerce. On the same date, the defendant, did knowingly and with intent to defraud possess 15 or more counterfeit and unauthorized access devices, as defined in 18 U.S.C. § 1029(e), that is, credit card and debit card account numbers, and the offense affected interstate commerce. The defendant also did knowingly possess and use, without lawful authority, a means of identification of another person, specifically, the credit card numbers of victim M.S., victim J.S., and victim C.T., during and in relation to a felony violation of possessing 15 or more counterfeit or unauthorized access devices with intent to defraud, in violation of 18 U.S.C. § 1029(a)(3), knowing that such means of identification belonged to an actual person.

On July 22, 2022, when the FBI executed a search warrant at the Defendant's residence, they found two fraudulent identification cards with the Defendant's picture and the name T.M., a credit card encoding device, approximately thirty nine fraudulent credit cards, two HP Desktop computers connected to an HP laser jet printer and an HP Office Jet Pro printer, an HP laptop with one Scan Disk flash drive attached, one Lenovo laptop computer, one iPhone, blank check paper, and

Defendant's Initials BHM                27

personal identification information of multiple individuals. In a bookcase inside the residence's living room special agents located a packet that contained social security numbers, birth dates, copies of driver's licenses, and other PII information of five different individuals that did not reside in the premises.



One card encoding device found in the residence with blank cards

Most of the credit cards found in the Defendant's residence and vehicle were in the name of T.M. When the fraudulent credit cards were scanned it was found that the numbers on the front of the cards did not match the real account numbers. Fifteen or more of the cards scanned matched accounts of real account holders. Some of those account holders reside out of the state of Florida and none of them authorized the defendant to have access to their credit card numbers. Additionally, a federal agent sent subpoenas to: Navy Federal Credit Union, Lake Michigan Credit Union, Bank of America, and American Airlines Credit Union. Each of those financial institutions responded to the subpoenas by confirming that the scanned

Defendant's Initials _BHM_                    28

account numbers belonged to actual customers of their institutions. Each of the previously mentioned financial institutions are headquartered outside of the state of Florida.

The FBI contacted many of the victims of the Defendant's fraud, including C.T., J.S., and M.S., each of whom disclosed they did not know the Defendant or T.M. They expressed that they did not give the Defendant permission to access or use their accounts nor did they know how he obtained their information.

Agents found a card encoding device and multiple fraudulent credit cards inside the Defendant's BMW 528i.



Portable card encoding device found in the center console of the vehicle

Upon review of the Defendant's phone, agents found chats he had with multiple individuals on the Telegram chat platform. During the chats the Defendant talked with other users about how to obtain fraudulent credit cards, gain access to

Defendant's Initials _BHM_                    29

banking accounts, apply for unemployment, make fraudulent credit cards, and other means of fraudulently obtaining access to or opening accounts to deposit proceeds of fraudulent activity.

The Defendant admitted to law enforcement officers that he purchased credit card numbers from individuals via the "darknet," followed by the purchase of credit cards from other users on the "darknet."

The Defendant used the Evolis thermal card printer, two black card encoders, two HP desktop computers, and his iPhone to make and use fraudulent credit cards, fraudulent checks, and to discuss different ways to commit fraud.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.